CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 05 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JONATHAN WADDY, | ) | CASE NO. 7:11CV00320 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | |
| | ) | |
| SGT. SANDSTROM, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

Jonathan Waddy, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant prison officials used racial slurs and excessive force against him. Defendants have filed a motion for summary judgment, asserting that Waddy failed to exhaust administrative remedies as required under 42 U.S.C. § 1997e(a). Waddy responded, making the matter ripe for disposition. After review of the record, the court grants defendants' motion under § 1997e(a) as to Waddy's claims of excessive force, failure to protect, and race discrimination. The court also summarily dismisses Waddy's due process and conspiracy claims, pursuant to 28 U.S.C. § 1915A(b)(1).

I

In his amended complaint, Waddy alleges the following sequence of events relevant to his claims. On October 5, 2010, Waddy was incarcerated at Keen Mountain Correctional Center. Waddy was talking with Sgt. Sandstrom and Officer Justus as they escorted him through the laundry area of the prison, when Sandstrom said, "That's it. I'm going to lock your black ass up for not shutting your damn mouth and rolling your eyes." The officers took Waddy's arms and began escorting him to the segregation area. Suddenly, the officers forced Waddy against the wall, causing him to split open his lip. When Waddy reacted by turning around, Sandstrom

grabbed him by the throat and began choking him. Sandstrom said, "You like to run your mouth nigger. I got something for you." Sandstrom then tried to spray mace in Waddy's mouth. Waddy twisted away from Sandstrom and fell to the floor, where the officers kicked him and shouted for him to get up. Justus grabbed Waddy's wrists, causing the handcuffs to cut into his skin.

Waddy alleges that as a result of the October 5, 2010 incident, he suffered physical injuries to his lip and wrists, and his neck was sore for a day and a half. These injuries required only ointment and band aids. Waddy also states that he has suffered from depression and anxiety and has seen three mental health specialists about the incident.

The officers charged Waddy with refusing to obey a direct order to be cuffed. The hearing officer found Waddy guilty of this charge, based on the officers' reports, and imposed a penalty of 30 days in isolation, with credit for 15 days in prehearing detention.

Waddy asserts that the defendants conspired to violate his rights because of his race, used excessive force against him and failed to protect him, brought a false disciplinary charge against him, and caused him to be reclassified to a higher security prison. Waddy seeks monetary damages.

Operating Procedure 866.1 sets out the administrative procedure inmates in Virginia Department of Corrections (VDOC) prisons must follow to resolve grievances. An inmate must first make a good faith effort to informally resolve his grievance about an incident by submitting an informal complaint. If dissatisfied with the response to his informal complaint, the inmate may then file a regular grievance within 30 days of the incident, with the informal complaint and response attached.

OP 866.1 provides three levels of review for regular grievances. The Warden or Superintendent of the facility conducts Level I reviews and must respond to the regular grievance within 30 days. When the Level I review paperwork is returned to the inmate, it includes the title and address where the inmate may forward his appeal if he is dissatisfied with the Level I response. The Regional Director provides Level II review of grievances not related to medical care or time computation, and Level II is the final level of review.

Waddy filed an informal complaint on October 6, 2010, the day after the incident. (Deft. Ex. 1, Encl. A) On this form, Waddy complained that on October 5, 2010, Sandstrom had tried to choke him and spray OC spray in his mouth and that Officer Justus had tried to break his wrists, although Waddy had done nothing to provoke this assault. A sergeant responded on October 22, 2010, stating that Waddy's allegations were unsubstantiated and that the medical staff who examined Waddy noted no injuries.

Waddy filed a regular grievance on November 2, 2010, making the same allegations as in the attached informal complaint, but adding that his lip and wrists had been injuried. (Id.) The warden issued a Level I response on November 21, 2010, determining Waddy's grievance to be unfounded.[1]

Waddy appealed the Level I response in late November or early December 2010 by mailing the Level I response to the regional director. Waddy did not submit the original grievance or informal complaint with his appeal, however. Instead, Waddy mailed these documents to his mother for "safekeeping." On December 15, 2010, Waddy received a memorandum from the regional director's office, dated December 7, 2010, which states:

---

[1] In the Level I response, the warden states that according to reports of the incident, Waddy became verbally abusive when meeting with Sgt. Sandstrom, who removed his OC spray canister; Waddy was then restrained for escort to the special housing unit (SHU); and in transit, Waddy attempted to pull away, Officer Justus applied a "come along technique," ordered Waddy to keep walking, and Waddy complied. (Deft. Ex. 1, Encl. A)

3

> When appealing the Level I decision, send the original grievance form with the Level I response and your reasons for appeal, <u>along with any original informal materials and supporting documents</u>. Resubmit your appeal package to this office within 5 calendar days.

(Deft. Ex. 1, Encl. B) (emphasis in original). The following note appeared at the end of the letter: "<u>OTHER: Attach the original Regular Grievance and informal Complaint to the LEVEL I appeal and resubmit for LEVEL II review.</u>" (Id.)

Waddy immediately wrote to his mother and asked her to send the grievance and informal complaint to the regional director. A few weeks later, Waddy received a second memorandum from the regional director, dated January 4, 2011, which stated: "Your appeal exceeded the 5 calendar day time limit. No further response will be provided." (Deft. Ex. 1, Encl. C) The following note appeared at the end of the letter:

> OTHER: Second attempt to appeal L1 decision without providing original grievance and informal materials. Waddy received letter dated 12-07-2010 on 12-15-10 directing him to resubmit L1 appeal within 5 calendar days, he failed to comply.

(Id.)

Waddy received a letter from his mother on February 9, 2011, enclosing the grievance and the informal complaint. She stated that she had sent the regional director the wrong papers. Waddy wrote the regional director a letter, explaining what had happened. A few weeks later, Waddy received a reply letter from the regional director's office, returning all his paperwork to him. At the top of the copy of the Level I response, someone had written and highlighted in yellow: "Appeal exhausted return to offender." (Deft. Ex. 1, Encl. A) Waddy interpreted this statement as an indication that he had completed the appeal process.

4

II

The Prison Litigation Reform Act ("PLRA") provides, among other things, that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. Nussle v. Porter, 534 U.S. 516, 524 (2002). This exhaustion requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or some other wrong," and whether the form of relief the inmate seeks is available through exhaustion of administrative remedies. Id. To comply with § 1997e(a), an inmate must follow each step of the established administrative procedure that the state provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. See Woodford v. Ngo, 548 U.S. 81, 90-94 (2006).

A. Excessive Force

Defendants argue that Waddy's claims of excessive force and failure to protect should be dismissed because he failed to properly exhaust available administrative remedies as required under § 1997e(a). The court agrees. Although Waddy properly completed the informal complaint and the regular grievance correctly, it is undisputed that he failed to submit the grievance and informal complaint for the regional director to review in the Level II appeal process within the prescribed time limit, even after being given a second chance and explicit instructions on how to do so.

Waddy asserts that OP 866.1 does not explicitly state that the grievance and informal complaint must be attached to the appeal of the Level I response. He states: "I was completely unaware of the requirement [that] the original grievance and informal complaint must be attached to the [L]evel 1 response [and] I have made a good effort to exhaust all administrative remedies." (Pl. Resp., p. 3)

5

While the grievance procedure does not include a list of paperwork that the inmate must send to the regional director for an appeal at Level II, the purpose of the procedure as a whole is to provide impartial review and resolution of inmate grievances. Inmates are oriented to these procedures when they first enter a VDOC prison facility. For Level I review, the procedure requires the inmate to present his grievance and informal complaint to the warden for review. Logic dictates that at Level II, the regional director must have the grievance to review in order to determine whether or not the Level I response to the grievance was appropriate. The Level II appeal procedure places the burden on the inmate to send the appeal of the Level I response to the regional director and does not indicate that a copy of the grievance will be sent to the regional director by any other means. Thus, Waddy's alleged assumption that he did not need the grievance and informal complaint documents after Level I was unreasonable.

Moreover, Waddy's claim of ignorance of the grievance appeal procedures cannot overcome defendants' evidence that he failed to comply with those procedures. Section § 1997e(a) does not include any such exception to the complete exhaustion requirement. Therefore, "ignorance of the proper grievance procedure does not excuse compliance." See McSwain v. Schrubbe, 382 F. App'x 500, 503 (7th Cir. 2010) (citing Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001) (noting that court cannot read "futility or other exceptions in statutory exhaustion requirements where Congress has provided otherwise"); Chelett v. Harris, 229 F.3d 684, 688 (8th Cir. 2000) (refusing to read exception into § 1997e(a) based on inmate's inaccurate "subjective beliefs" about the administrative remedies procedure as reason for failing to exhaust properly).

Waddy did not comply with required procedures even after the regional director informed him of the appropriate paperwork necessary for the appeal and gave Waddy a second chance to

6

submit it. The instructions were to resubmit the appeal with the grievance and the informal complaint. Waddy failed to do so and, as a result, failed to comply with § 1997e(a). Waddy eventually attempted to submit the appropriate appeal paperwork outside the time limits set by the procedure and the initial extension granted by the regional director. Prison officials rejected this submission as untimely. Waddy now has no available administrative remedy procedure.

For these reasons, the court finds no material fact in dispute as to whether Waddy failed to properly exhaust administrative remedies as to his excessive force and failure to protect claims. Therefore, the court concludes that the defendants are entitled to summary judgment under § 1997e(a).

B. Equal Protection Claims

Defendants argue that Waddy failed to exhaust administrative remedies as to his claim of racial discrimination. The informal complaint and grievance about the assault do not mention the racial comments the officers allegedly made during the incident. Moreover, Waddy admits he did not file any separate grievances alleging racial discrimination. Waddy's failure to mention the racial comments in the administrative grievances prevented prison officials from conducting a contemporary investigation of the alleged racial element of the incident, one of the primary purposes of the § 1997e(a) exhaustion requirement. On these facts, the court concludes that defendants' motion for summary judgment under § 1997e(a), for failure to exhaust administrative remedies, must be granted as to Waddy's allegations of race discrimination.

III

Any claim filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under 28 U.S.C. § 1915A(b)(1) if the court finds that a claim is "frivolous, malicious or fails to state a claim upon which relief may be granted." An

7

inmate's complaint may be summarily dismissed under this section if it fails to allege "enough facts to state a claim to relief that is plausible on its face." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.562, 129 S. Ct. 1937, 1940 (2009).

A. Due Process

Waddy asserts that the defendants falsely charged him with a disciplinary offense related to the October 5, 2010 incident, in violation of his due process rights. Defendants do not argue that Waddy's due process claim should be dismissed under § 1997e(a). The court concludes, however, that Waddy's due process claim fails on the merits and must be dismissed under 28 U.S.C. § 1915A(b)(1).

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, prisoners' liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Further, prisoners do not have a

8

constitutionally recognized liberty interest in a particular security classification or a constitutional right to be confined in a particular prison. Hewitt v. Helms, 459 U.S. 460, 468 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976).

Waddy fails to state facts showing that defendants' actions deprived him of any protected liberty interest. Waddy's allegations do not indicate that his penalty of temporary confinement in isolation worked any atypical hardship on him, when compared to the normal rigors of prison life. Likewise, he fails to demonstrate that his transfer to a higher security facility has resulted in atypical hardship. Because Waddy had no protected liberty interest at stake during the disciplinary proceedings and prison transfer, those proceedings cannot give rise to any federal due process claim. For these reasons, the court summarily dismisses Waddy's due process claim under § 1915A(b)(1), as legally frivolous.

B. Conspiracy

The defendants also do not address separately Waddy's allegation that defendants conspired to violate his constitutional rights. Waddy fails to allege facts demonstrating that the officers formed any type of agreement to harm or discriminate against him, however, and conclusory assertions of conspiracy are insufficient to state any actionable § 1983 claim. See Brown v. Angelone, 938 F. Supp. 340, 346 (W.D. Va. 1996) (finding that where allegations of conspiracy are merely conclusory, without facts showing common purpose to injure plaintiff, complaint may be summarily dismissed) (citing other cases). Therefore, the court summarily dismisses Waddy's conspiracy claim under § 1915A(b)(1) as frivolous.

IV

For the stated reasons, the court grants defendants' motion for summary judgment under § 1997e(a) on the ground that Waddy failed to exhaust state court remedies as to his excessive

9

force, failure to protect, and equal protection claims. The court also summarily dismisses without prejudice Waddy's due process and conspiracy claims under § 1915A(b)(1) as frivolous. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 5th day of June, 2012.

/s/ Jerry Conrad
Chief United States District Judge